You're familiar, I hope, with our lighting system. When the yellow light goes on, that means that your time is about to expire, so start wrapping up. If we take you beyond the lights, then don't worry about it. You're on our time and not yours. And with that, we're ready to begin. Our first case is No. 16-15737, Veronza Bowers, Jr. v. United States Parole of Commission. Mr. Frank. May it please the Court. My name is Ted Frank, and I'm one of Veronza Bowers' lawyers. I would like to reserve, as you know, I have reserved three minutes for her, but there are two issues that I'd like to discuss in this argument. The first is whether Section 4206-T, the mandatory parole provision of the Parole Act, requires the Commission to deny mandatory parole whenever a prisoner seriously violates prison rules, without regard to whether and when the violation occurs or what his conduct might subsequently be. And the second is whether the Commission on remand from Bowers I, and we'll refer to Bowers I and Bowers II as we did in our briefs, afforded Mr. Bowers a fair and impartial hearing ab initio, as this Court required, in accordance with the Due Process Clause and the mandate of the Court. Can I ask you one question that I'd like you to address at some point during your argument as you see fit? I understand your argument about the proper interpretation of 4206-D, but the question I'd like to pose to you is whether you think that Mr. Bowers was required to receive mandatory parole, or whether or not, even if your interpretation of the statutory provision is correct, the Parole Commission had discretion to consider, for example, the rest of his record while he was incarcerated and deny parole. And the reason I ask that is not so much for Mr. Bowers' case, but because what we say in this case is going to govern other cases in the future for those who are still left in the parole system. And so it matters from an institutional perspective, although I know that you represent Mr. Bowers foremost. I understand that. No, we do not think that he is automatically entitled to a mandatory parole. We think that the Commission is required to evaluate his escape attempt in 1979, which we can see that in 1979 was a serious violation of the rules, but they're required to balance that against his overall record. And Mr. Bowers has not had an infraction of the prison rules since 1988, which is about 30 years ago, more or less. So it's a balancing requirement, and he's not absolutely required to do it. Although that will get to the question of what we think is the appropriate remedy in this case. No, I know. I know you've asked for the remedy, and that's part of your argument. I just wanted you to address that other point at some perspective. You say it's a balancing test, but nothing in the language of the statute indicates that, that the Commission shall not release such a prisoner if it determines that he has seriously or frequently violated institutional rules. Breaking that down, if it determines he has seriously violated institutional rules, there's no clause that says, and after you decide that, then you should balance it against the rest of his behavior. In all due respect, there's no clause in the statute which says they're precluded from doing it either. And the section should be read in the context of the Act as a whole. I think as we demonstrated in our brief, if you look at the Act as a whole, reading the Commission's, reading the statute, mandatory parole provision is the way the Commission has, looking solely at that subsection of a section, can't be reconciled with the rest of the section. So what you're saying then is you're saying that at the least, as I stated the question arguably into the plain language of the statute, you lose, but you're saying at the least it's ambiguous. But if you're saying at the least it's ambiguous, don't we get into Chevron deference, and then doesn't the Parole Commission have a deference or have the discretion then to interpret that statute? The Commission, under Chevron, there is discretion granted. But Chevron's discretion is only granted to the extent that the Commission's, the agency's interpretation of the statute comports with the purpose, structure, and legislative history of the statute. And we think in this case, given the anomalies that the Commission itself admits exist, by reading the statute their way, none of which exist if you read the statute the way we believe it should be read, that the Commission is required to balance the serious violation against his subsequent good behavior. None of those anomalies exist. It gives full purpose to the requirement. I don't understand the anomalies exactly, and I could be wrong about this. You've read these statutes more than I have probably. But as I read it, the mandatory parole release provision says, look, you're going to get out in 30 years, unless you've had a serious violation of the rules or a frequent violation. Do that, you're in big trouble. But you're not irrevocably in trouble. You have discretionary parole where the Commission always has the authority, as I understand it, every few years to look at whether you've substantially complied. That is, you've had an escape, but you've done okay otherwise. Would releasing you undermine the seriousness of your offense? So the mandatory is a get-out-of-jail-free card. If you can say serving 30 years is get-out-of-jail-free, it's a lot. But it's mandatory. But if you've screwed up in that way, then you still have the ability under discretionary release for the Commission to balance everything, as you suggest. Is that wrong? We could not find a case for President as to whether or not, once the 30-year period runs, discretionary parole is still available. That's an issue that has never been resolved, as far as we can determine. Does he still get discretionary hearings? He gets mandatory parole hearings every two years. As I understand the way the Parole Commission operates, discretionary parole is behind him. So under discretionary parole, he could have been released. Is it a statute that he doesn't get discretionary parole hearings anymore? Mr. Powell, perhaps, can answer that question better than I can. But we could not find any case, and my co-counsel, Mr. Weisselberg, who has had extensive experience in parole matters, is not aware of any situation in which discretionary parole has been granted once the mandatory parole date has been reached. But have you all, as his lawyers, said, you know, this is another outlet for us, you know, because we'd like a way for you to balance it. Could we have a discretionary parole hearing? Have you tried? We have not tried because, for reasons that go to the due process argument, we think the record in this case shows quite clearly that this commission is not going to grant Mr. Bowers a parole. It has consistently taken— That's where you want to get to, the due process argument? Are we— No, I'm just saying that it goes—your argument goes to the question of remedy because one of the reasons we have not gone back from discretionary parole hearings is because we don't think he's going to get a fair hearing. You think the result is preordained. We think the result is preordained, that the commission was reprimanded by the Department of Justice when it granted him a parole in 2005. The Attorney General's letters—memo said, you ought to revisit this issue and gave no reasons for it. The commission promptly turned around and denied parole, and has held fast to that position ever since. Don't you think because it was a federal law enforcement officer? Excuse me? Don't you think it was because it was a federal law enforcement officer? That could be, Your Honor, but I would think that that, under our system of justice, it's fairness over the term of the— that because he committed a—he killed a police officer, a law enforcement officer, he was given a life sentence. And that—but under the sentence that he was given, he was entitled to parole after 30 years if his conduct was appropriate. And we think that over 25 years, he's had a pristine record. No violations since 1988. And that—that's the way Congress has balanced the murder— the killing of a police officer. It didn't provide for a life sentence without parole in those events. It just provided for a life sentence. But Bowers 1 and Bowers 2 seem—they're the law of the case. They indicated that we're starting over. And they didn't indicate that, you know, if you're forever tainted, the Parole Commission was their decision. We're going forward. So your argument then is that the commission, as it was constituted, I guess, with three commissioners at that point, and it was Mitchell, the former— Pishwa and Smoot. What was Smoot and— Pishwa. Yes. That they could not be fair. But as I look at it, when the parole was first granted and then denied back in 2005, Mitchell voted for your client. Then he didn't. And then Smoot had always been—no, who was the other person? Pishwa was always— Pishwa had always been against your client. And then the new person had not done it. So I don't understand why you said it's foreordained. We had a new commissioner, plus we already had the commissioner who had voted for him before all the taint. So that's two out of three. Yeah, but the commissioner who voted for him, Mr. Mitchell, who voted for him, said in his deposition on the remand, and it's in our brief, I believe to page 5456, he said that the hearing back there was just the process of signing the necessary papers. And he has now said that he is committed to denying that a serious offense precludes the grant of Mr. Bower's parole. Mr. Mitchell isn't there anymore. In fact, as far as I can tell from the commission's website, there are only two commissioners, Commissioner Smoot, who spent all of 45 minutes going through the record over there, which is, as you can see, is rather voluminous in this case. And that doesn't include his prison record of some 42 years. And she spent all of 45 minutes. So she didn't give him any real serious consideration as to whether, if you look at this as a whole, he should be given consideration.  they had the ability not to grant parole if they found one serious, because obviously if you're going to say that, yeah, you've got to look at the whole record, we're maybe in a different ballpark here. But I thought you had a different due process sort of argument that, leave aside all of that, that basically this was so tainted that due process was violated. We do take that position because of the way the commission exists under the Department of Justice and the control the Department of Justice has over the commission's operations. This is the only case in which You're saying every time they deny parole in a dicey case, then it's probably a problem. No, we're not saying that. We're saying under the facts of this case, for the first time in the commission's 30-year history, the Attorney General intervened to urge the commission to reverse the grant of a parole. And where the commission has ever since then consistently denied parole, summarily in this case on remand from Bowers 1, because the record indicates that they had no consideration to the arguments that Mr. Bowers made as to the construction of the statute or as to his record. The summary denial there and the continuing oversight the Department of Justice has over the commission. The commission is supposed to be an independent agency, but the former chairman of the commission said they're under the control of the Department of Justice. They don't even report to Congress directly. The Department of Justice reports to them. The Department of Justice controls whether they continue to exist. They grant paroles now and then, I imagine, don't they? They do. But what we're saying is that this is a unique case. This is the only case in which they have reversed the grant of a judgment. Well, there's one other, but the gentleman is dead. There are very few cases in which the Attorney General is. This is the first one only. And it's a unique case. It's not a general case in which they're operating and making decisions about parole without any interference with the Department of Justice. The commission was created to keep it insulated from political pressure that the Department of Justice is imposing upon it, we think, in this case. So the bottom line is we think that the commission's decision here is tainted, that it satisfies the test in Withrow and Rippo, that looking at it objectively, a reasonable person would say that the bias exceeds that which is constitutionally tolerable, and urge this court to grant a petition and direct the district court to order the commission to grant a parole under its March, May 2005 grant of a parole. We're not asking you to substitute your judgment for that of the commission. The commission granted them a parole in May of 2005. Nothing has changed since then except that he's 12 years older and a lot sicker. He's walking. He's had sciatica and has to use a walker. He's no threat to society. Thank you, Your Honor. Thank you very much, Mr. Frank. You've saved your time for rebuttal. Mr. Powell. May it please the Court, I'm David Powell with the U.S. Attorney's Office, Northern District of Georgia, and I represent the United States Parole Commission and tangentially the warden in this case as the custodian of Mr. Bowers. As the Court has noted, the ultimate issue in this appeal is simply whether the Parole Commission's denial on re-vote should be affirmed or not.  I would argue that it should be affirmed because it did act in an unbiased and uninfluenced basis in making its decision. The district court applied proper standards, which was one of the challenges in the briefs below. Let's talk about that for a second if we could. And I'd like, if we could, to break it down into segments because from my perspective, I think that there may be different standards of review depending on where you go in the analysis. Yes, Your Honor. So, for example, the ultimate denial of parole may be subject to an arbitrary and capricious and bad faith standard. But it seems to me that whatever deference you give, that can't be the standard for the Parole Commission's interpretation of the statute, right? That can't be possible. There are no cases out there that I have been able to find that say that an agency's interpretation of a statute takes you beyond Chevron deference to an arbitrary and capricious standard which goes to your ultimate decision on the merits. Am I right or am I just missing something? I believe it's step one of Chevron. The court is executing its prerogative to interpret the statute to determine whether the meaning is plain, whether through the statutory language or taking into consideration the legislative history or even the entire Act, trying to harmonize the various provisions of the Act. No, I'm going to take you into Chevron in a second, so we're not even there yet. I want to know before you even get to any deference, and I'm assuming for purposes of my question that the Parole Commission is entitled to some deference in interpreting the statute. My question to you is can that deference ever be stated as an arbitrary and capricious standard? And if so, if you know of any authority that lets us do that, I'd be happy to hear it. Well, Your Honor, in Cook, the Eleventh Circuit panel equated the deference. We're not dealing with a regulation here. We're dealing with an interpretive rule that was applied in a decision-making process within Mr. Bauer's hearing. There's no interpretive rule. There's no rule here. It's just a flat-out interpretation of the statute because the Parole Commission's rule says nothing different than the statute, right? They're one and the same. Right, the rule except that the regulation actually adds the language that shall be continued until expiration of the sentence. Okay, but that's neither here nor there in this case. Right. So my question to you is where do you get an arbitrary and capricious standard for an agency's interpretation of a statute? Okay, well, in this case, we're focused purely on what the meaning of serious is. And in the determination, the statute is such that it says that the commission shall not. I'm not. Okay. I don't want to get into the merits of the issue yet. I just want to know, generally speaking, do you ever use an arbitrary and capricious standard to evaluate an agency's legal interpretation of a statute? Not its application of the statute to the merits and its ultimate decision, for example, the decision to deny Mr. Bauer's parole, but to the meaning of the statutory text. Is there ever a place for the use of the arbitrary and capricious standard at that level of analysis? Well, Your Honor, my interpretation of Cook is that whether it's a reasonable interpretation or not is the equivalent of whether they abused discretion or whether it's arbitrary and capricious. I know, but those are all legal terms of art, and abuse of discretion is not the same as arbitrary and capricious. And that matters. It may not matter here in the ultimate result, but it matters in cases going down the line. So I'm trying as hard as I can to pin you down with little success. You may not lose no matter what the answer to my question is, but I would like an answer to the question if I could. Okay. I will try. It's a very confusing issue, and my belief is that to the court, it's a question of law applied to sort of a mixed question, if you will, in this case. But for the pure legal analysis, it would be— So you just get deference, but you don't get arbitrary and capricious review? Is that right, or am I putting words in your mouth? I believe that's right. You get deference, and then if there is later the application of that to the facts, then that's the arbitrary or capricious which— Okay. Okay. That makes sense to me. Okay. That makes sense to me. Now, with regards to deference, the Parole Commission has not engaged in formal rulemaking with regards to a regulation that interprets the statute any differently. All we have is basically the recodification of the statute. So in your opinion, do you get Chevron deference? Do you get Skidmore deference, or do you get something in between? Because Skidmore deference is what you generally get with informal applications or informal or ad hoc rulemaking or interpretations by agencies. In other words, the agency hasn't proposed a regulation, hasn't put it out for notice or comment, hasn't received pros and cons, hasn't deliberated, and hasn't issued a regulation. So what sort of deference is it, do you think? I believe it's the Skidmore deference. We're not dealing with a notice and comment enactment. We're dealing with just an interpretation that was necessary to make a decision. And that seems to be what Cook has applied, although it did not cite Skidmore. Okay. Okay. You've answered my question, so you can proceed with your argument. Thank you very much, Mr. Powell. Okay. And leading into that then, first, the Commission definitely acted independently. Mr. Bowers has strung together a number of facts, some of which predated that they knew before discovery, some of which they found out during discovery through reading emails and various things, that the items were such as that the DOJ, Department of Justice proper, has influence or control on their budget, although the statute says still that the chairman propounds and determines the budget. It does pass through the Department for administrative purposes at this point. Who makes a request to Congress? The Department has a component that pulls all of the different DOJ components, budgets, together and submits the request. So the Parole Commission sort of depends on the Department of Justice to further its budget agenda? I believe that's appropriate. I mean, proper interpretation, especially since the 1998 legislation that requires the Attorney General to review and make reports on the Parole Commission's activities and viabilities and whether those functions should be moved into a different component of the Department of Justice. That's a requirement by law that there be some involvement. And that is also why the Department and the Attorney General are involved in the reauthorization legislation that appears every two, three, five. This last one, I think, was a five-year extension through 2018. So let's talk about the merits then, Mr. Powell. So in your view, a serious infraction automatically disqualifies or the Parole Commission's view – I shouldn't say your view. In the Parole Commission's view, a serious infraction automatically precludes a prisoner from getting mandatory parole but still permits the granting of discretionary parole, right? That's an interesting question and we don't. There's been no determination whether subpart A is available to a two-thirds date prisoner. I know. That's why I'm asking you. On the face, there doesn't appear to be a preclusion of review under that. So that means that the Parole Commission is going to say this infraction was serious. And although it occurred decades ago, it's so serious that you're precluded from mandatory parole. But don't worry because you've got discretionary parole coming up in six months and we're going to give you discretionary parole. That's a crazy legislative system, don't you think? It would be. Well, that's what the Parole Commission says, right? Well, there's no official interpretation but my understanding is – I understand but you're advocating for the Parole Commission so you're unfortunately the guinea pig here today. Okay, my understanding from discussions with the Commission's counsel that it likely would be interpreted that there's no A review but they haven't had to address that yet. Why haven't they given Mr. Bowers discretionary parole review? Isn't discretionary parole review automatic when it applies? In other words, you get it every X number of years? Well, actually, that is their position there is that once they reach the two-thirds date, they're reviewed under D. That's what Mr. Bowers was seeking in this case and we actually – what promulgated the 2005 consideration was a grant of habeas release that they had to consider him for the mandatory release under D, under 4206D. So the Parole Commission's, if not official interpretation but its interpretation through action or inaction, is that A goes by the wayside once D becomes technically applicable? Is there an official interpretation or you just have a water cooler conversation with somebody in the Parole Commission? Basically, that was hypothetical discussions, Your Honor. So we don't have anything official? I have no official position but that's just in practice. Mr. Bowers never requested that you give him a discretionary hearing or is that something people can do? I don't know. Well, that is – they can make a request for review. In this case, back in the previous – like the first and second rounds, there were requests. At one point, Mr. Bowers made his own request for parole review, another hearing, and that was withdrawn as he – I can't say why he and his counsel decided to withdraw it, but that was withdrawn and he's never asked for another hearing at this point. And the revote was not a full rehearing. It was just a revote of whether or not he should be given mandatory parole. And there was mention of the fact that – or the argument that it's preordained that he would be denied relief under any circumstance because of the Attorney General's involvement in the 2005 decisions that the court – and rolled it back to the tie vote and authorized the Commission to determine whether it should take further action under its revote regulation and denied relief on everything except for the allegation that former Commissioner Spagnoli had tainted the proceedings. And that's the law of the case, that if the Attorney General's involvement in 2005 was not – did not state a claim, then his lesser involvement in this last round also could not be argued to be tainting the proceedings. And there's no – none of the evidence Mr. Bauer cites considered singly or in conjunction with the cumulative effect show that there was any connection to the decision in this case or – and it does not even imply that there was a connection to this case. I presume that there are reported cases – I'm not asking about any water cooler stuff. But I presume that there are reported cases where the Parole Commission has granted discretionary parole to somebody who has committed a serious infraction, right? Well, what they consider serious enough to – whether it's serious enough to allow – to require them to deny or not is the standard there. Like for escape, there have been some that have been – two have been granted parole that had escapes, but they found that those were not as serious. Those were mandatory scenarios, right? I'm asking you whether you know of any reported cases, not discussions you've had informally with the Parole Commission itself. I think as Judge Cardin suggested, that would be an unfair question to ask you. But are there – do you know of reported cases where the Commission has granted discretionary parole to someone who has committed a serious infraction while incarcerated? I can't, standing here, cite one, Your Honor. Okay. Yeah. Is the standard for serious infraction the same at the discretionary parole stage as it is at the mandatory parole stage? Well, they – that's a factor, but they have discretion to determine. I thought the discretionary parole statute didn't even mention the word serious. I thought it just said, have you substantially violated the real substantial, meaning maybe you had one bad escape 30 years ago, but since then you've been good, so you've substantially complied. Then you go through all the nature and circumstances. Would it undermine the seriousness of the offense? You go through the holistic approach of – I didn't think, is there, in discretionary review, looking at whether something's serious or not as part of the statutory formula? I thought it was substantial. The statute does not directly consider whether it's serious or not, but look at the whole picture. And would it depreciate the seriousness of the original crime? Does the prisoner pose a risk to society? And on the balancing of all of the factors of this prisoner's case, should he nonetheless be granted parole? So your reading of the statute is, or you would argue, that you could commit a serious offense and escape 30 years before, have a clean record, come through a discretionary review, and under the language of the statute, be granted a discretionary parole based on not something that's automatic, but a holistic review of the prisoner. Is that your position? That's right, Your Honor, such as whether the prisoner accepts responsibility for their crime or not is one of the factors that is always considered under A. And if there are no further questions, I see I'm beyond my time. We would ask that the court affirm the district judge's decision and that Mr. Bowers is not entitled to habeas relief in this case. All right. Thank you very much, Mr. Powell. Mr. Frank. A couple of points. First, I think on whether or not discretionary parole is available, that when Mr. Bowers first sought habeas relief in this case, in his case, when the district court, when the commission, excuse me, retarded his release from prison the first time. He was prisoner, the Bureau of Prisons had scheduled him for release. He was supposed to be released. His family was outside waiting for him. They retarded his release. When that went to habeas, I believe the commission took the position that he was no longer eligible for parole because he had waived his mandatory parole rights. Say that again. That because he had waived his mandatory parole rights, he was no longer entitled to parole. What do you mean waived his mandatory parole rights? That was the position is that he had waived a discretionary parole hearing. Oh, discretionary, not mandatory. No. And then they held it. That effectively denied him the opportunity for a mandatory parole. That was reversed. But they took the position that the two were not, that discretionary parole was not available once mandatory parole was kicked in. That was what got reversed. That got reversed by the legislature. Or the district court maybe. District court in Florida. Didn't even get appealed. The district court said you're wrong on that. They sent it back and directed the commission to give him a mandatory parole within 90 days. We think there is no case in which I could find, we could find no case in which the court has deferred to an agency under an arbitrary capricious standard in determining a statute. And it would seem to me that that would be somewhat inconsistent with the well-established rules of construction that the courts have determined what the law is, giving discretion on a reasonable balancing under the statute. The question ultimately is, are they implementing the statute? And an arbitrary capricious standard for that purpose I don't think is the correct one. And on the due process part of the bias part, I thought from your brief you were arguing more that it was a congressional problem, that they're constantly reauthorizing it. And let me just finish my question. Congressional problem and that Senator Coburn had held it up as apparently he held things up a lot according to the record. And that the parole commission was nervous about their existence. But from your argument today it seems to me you're arguing the bias is more because the Department of Justice is involved in their organization. Is it both or which one are you emphasizing? We had always maintained that Department of Justice and that Department of Justice is part of the bias problem issue that existed here. As well as the fact that there was congressional interference. What happened is when we did the depositions, the record was rather thin. And we did not find any direct interference as the district court held by the members of Congress. But what we did find was that there was no serious consideration of Mr. Bower's request by the commission. That they were just going through the motions. And that's why we shifted on this appeal to the argument that in the due process, in the sense of being denied his due process rights, the commission didn't give him a full unbiased review. The court in McCall's held due process requires a hearing by an open-minded tribunal. We don't think the commission has an open-minded tribunal here. Let me say in summation since I'm over my time. If this court sends this case back to the commission for another hearing, Mr. Bowers, who is now 71, is likely to die in prison without ever getting a fair and unbiased decision of his mandatory parole request. But you say unbiased, but if the truth of the matter is it's a legal question whether or not one serious offense bars you from mandatory versus looking at the whole record discretionary, open-minded is not exactly what we're talking about. We're talking about whether the construction is accurate, are we not? If this court concludes that the commission's interpretation of the statute is correct and that it doesn't have to take a holistic view of the prison record, which we think cannot be reconciled with the statute as a whole, if it takes that position, then bias is not a relevant issue. Yes, Your Honor. Thank you. Thank you very much, Mr. Frank.